**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable A. Bruce Campbell**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| OLD TOWN NORTH, LLC | ) | Case No. 12-21164 ABC |
| EIN 84-1588948 | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ROCKY MOUNTAIN HIGH LLC, | ) | Adversary No. 13-1025 ABC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JOLI A. LOFSTEDT, as Chapter 7 Trustee for the | ) | |
| estate of OLD TOWN NORTH, LLC, and | ) | |
| SHEAR ENGINEERING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RULING**

This adversary proceeding concerns adjudication of the respective rights of the holder of a deed of trust, a purported mechanics lienor, and the Chapter 7 bankruptcy trustee in this bankruptcy estate's principal asset. The asset in question is this bankruptcy estate's unsold portion of a mixed-use real estate development known as the Old Town North Subdivision ("OTN"). The project is located in the City of Fort Collins, Colorado, a few blocks north of downtown Fort Collins. The debtor in this case, Old Town North, LLC (the "Debtor"), was the developer of OTN. Debtor's initial work on this project was undertaken in 1998. OTN received final plat approval in June of 2004. Debtor continued for several years with efforts to develop the project and, in 2012, facing financial challenges and a loss of its credit lines, filed Chapter 7 bankruptcy. In August of that year the Debtor converted the case to Chapter 11 reorganization proceedings. After nine months in Chapter 11 without confirmation of a plan of reorganization, this case, on May 28, 2013, was reconverted to Chapter 7.

**I.      Procedural Posture of the Adversary Proceeding**

This litigation was initiated by Public Service Credit Union ("PSCU") as plaintiff. In September of 2008, PSCU loaned the Debtor $2,750,000 and secured that loan by a deed of trust (the "PSCU Deed of Trust") that encumbered portions of the OTN Subdivision. PSCU in this suit named the Chapter 7 Trustee and Shear Engineering Corporation ("Shear") who had filed a mechanics lien statement against portions of the OTN Subdivision. PSCU sought in its amended complaint a determination, as against the Trustee, of which portions of OTN then owned by the Chapter 7 bankruptcy estate are encumbered by PSCU's Deed of Trust. As against Shear, PSCU sought a determination that either the Shear mechanics lien was altogether invalid or, alternatively, junior in priority to the PSCU Deed of Trust.

The Trustee answered PSCU and counterclaimed seeking to avoid the lien of the PSCU Deed of Trust except to the extent it encumbers portions of OTN legally described as Block 1 and Block 6. The Trustee also cross-claimed against Shear, seeking to avoid its mechanics lien as noncompliant with the applicable Colorado mechanics lien statutes.

The Trustee also sought to set aside Shear's mechanics lien and recover her fees and costs under Colorado's statute concerning knowing improper recording of mechanics liens.

Shear, in turn, answered PSCU's complaint, counterclaimed, and cross-claimed against the Trustee. Shear sought a determination that its mechanics lien enjoys a first priority position against portions of OTN, legally described in Shear's recorded mechanics lien statement as Block 1, Block 6, Tract JJ, Tract KK, and Tract JJJ.

Shortly before this matter went to trial the posture of the parties and their claims was adjusted by three developments. An entity known as Rocky Mountain High LLC ("RMH") acquired PSCU's position and substituted in for PSCU as plaintiff in the adversary proceeding.

RMH and Shear settled their differences such that Shear conceded the senior position of the RMH/PSCU Deed of Trust over Shear's mechanics lien, and RMH no longer contested the validity of Shear's "junior" mechanics lien.

Lastly, days before the trial started, RMH sought further to amend the complaint to allege that, although the PSCU Deed of Trust that it now holds omitted parcels JJ, KK, and JJJ from the legal description of what it encumbered, reference to tax parcels covering, *inter alia,* parcels JJ, KK, and JJJ result in subjecting parcels JJ, KK, and JJJ of the OTN Subdivision to the lien of the RMH/PSCU Deed of Trust. The reference to tax parcels in the RMH/PSCU Deed of Trust appears at the top left corner of page one of the document.

The Court denied RMH's motion to amend the complaint, ruling that the content of the RMH/PSCU Deed of Trust was already front and center as this case was going to trial and that, in any event, Rule 15 would permit RMH to move to conform its pleadings to the evidence at trial. RMH so moved at the close of the evidence, and the motion was granted.

**II.     Jurisdiction**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b) and 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O), as it concerns, respectively, administration of this Chapter 7 estate; determinations of the validity, extent, and priority of liens against estate property; and proceedings affecting the liquidation of the assets of this bankruptcy estate and adjustments of debtor-creditor relationships.

**III.    Issues for Determination by the Court**

The parties' respective rights in the real estate that is the subject of their competing claims are governed in significant part by what and when they (or its predecessor in the case of RMH) recorded in the Larimer County real property records. A summary of the undisputed evidence in this regard is as follows:

| *Document Recorded* | *Date of Recording* | *Obligation Secured* | *Property Identified as Encumbered in Trust Deed Granting Clause or Lien Statement[1]* | *Exhibit No.* |
|---|---|---|---|---|
| Trust Deed for the benefit of BAUM ENGINEERING & DESIGN, LLC (released) | 6-13-08 | $960,000 loan 8% interest due 1-10-09 | Block 6, Tract JJ, Tract KK, Old Town and North Subdivision | RMH-4 |
| Trust Deed for the benefit of PSCU (now RMH) | 9-15-08 | $2,750,000 loan prime + 1.5% due 10-1-18 | All of Blocks 1 and 6 Old Town North and [several lots in Blocks 4 & 5 not involved in this case] Property address: 802-750 Jerome St., Fort Collins, Colorado 80524 | T-1 RMH-2 |
| Shear Statement of Lien | 12-19-11 | $119,660.72 | Block 1, Old Town North, FTC Block 6, Old Town North, FTC Tract JJ, Old Town North, FTC Tract KK, Old Town North, FTC Tract JJJ, Old Town North, FTC | T-7 |

The principal legal questions this Court must address, based on the evidence before it, are as follows:

– –   Whether by reason of its reference to "Tax Parcel Numbers" that encompass the land in Tracts JJ, KK, and JJJ, the PSCU/RMH Deed of Trust encumbers those tracts; or, to the contrary, whether any claimed interest by RMH in those tracts is avoidable by the Trustee pursuant to her Bankruptcy Code strong arm powers as a bona fide purchaser, without notice, under 11 U.S.C. § 544(a)(3)?

– –   Whether the PSCU/RMH Deed of Trust encumbers Tracts JJ and KK by way of subrogation to the lien rights of the now released Baum Engineering & Design, LLC ("Baum") Deed of Trust that was paid off by PSCU's loan; or, to the contrary, whether any such subrogation rights are cut off by the Trustee's section 544(a)(3) BFP avoiding powers?

– –   Stated from the Trustee's prospective on these first two issues, does this bankruptcy estate hold the Debtor's interest in the real estate in OTN free of interests of RMH, except RMH's lien against Blocks 1 and 6 which are agreed by all parties to be encumbered by the PSCU/RMH trust deed and not subject to avoidance?

– –   Whether Shear, under applicable Colorado law, has a valid $119,660.72 mechanics lien encumbering the property described in its lien statement, namely Blocks 1 and 6 and Tracts JJ, KK, and JJJ? If Shear does, the

---

[1] The only portions of the OTN Subdivision that remain property of this bankruptcy estate and are the subject of the competing claims of the Trustee, Shear, and RMH are Block 1, Block 6, and Tracts JJ, KK, and JJJ. The record in this adversary proceeding is silent concerning present ownership by this bankruptcy estate of any other portions of the OTN.

Trustee ascends to the Debtor's ownership of real estate in OTN subject to that lien. If Shear does not, the Trustee is entitled, as successor to the Debtor, to a declaration that Shear's lien is invalid.

– –   Alternatively, the Court is asked to determine whether the Trustee, as successor to the Debtor's interest in the OTN real property, may invalidate the Shear mechanics lien and recover her legal fees and costs under Colorado's statute that forfeits mechanics lien rights where a lien is knowingly recorded improperly.

**IV.**   **Background Facts**

The Debtor's efforts to develop OTN as a multi-use project north of Fort Collins, Colorado were initiated more than a decade before it sought bankruptcy relief in May of 2012. In late 1998, under the direction of its owner, Monica Sweere, the Debtor engaged Shear to act as the OTN project engineer. Shear and Ms. Sweere had previously enjoyed a good working relationship. Accordingly, the Debtor and Shear never bothered with a written agreement defining the scope of Shear's work concerning the OTN project and the parties' rights and obligations relating thereto. Instead, they worked together under one or more oral agreements under which Shear performed professional services and simply billed the Debtor or affiliate companies under the common control of Ms. Sweere. All of those bills were paid until bills for Shear's work on three assignments Shear undertook between February 2009 and September 2011. Those are the subjects of Shear's mechanics lien.

Shear's work with the Debtor/developer as OTN project engineer was comprehensive. It entailed regular work on the planning and design of the overall project and overall supervision of design and construction of project infrastructure with the objective of obtaining final plat approval for the development. Shear's project engineer role was that of the central, coordinating professional advisor to the Debtor working with the Debtor and its other development professionals on all aspects of pre-plat approval, design and construction of the project's infrastructure. In such assignments Shear worked with, among others, Debtor's land use planners, surveyors, and soils geologists, as well as experts on water, sewer, drainage, wetlands and other ecological concerns, traffic engineers and construction contractors. This work was referred to in testimony as the project's infrastructure or pre-vertical development phase.

This phase of the OTN development and Shear's task as project engineer culminated in final plat approval by the City of Fort Collins on or about June 11, 2004. Mr. Brian Shear, Shear's principal, testified that work on the entire subdivision continued until it was substantially completed by the first of March 2005. Miscellaneous follow-up work as overall project engineer continued between March 2005 and completion of such work in November 2007. The last bill for such work was November of 2007. All such work was paid for.

After final subdivision approval, the Debtor continued its effort of development of OTN. In addition to winding up work on the overall subdivision, Shear continued to work on discrete assignments. As with its work on the

infrastructure, pre-vertical development phase of the project, Shear had no written agreements with the Debtor or its affiliates for its post-plat approval work assignments on OTN.

By the middle of 2008, the Debtor had sold on the order of fifty home sites in the OTN project and had at least four separate mortgage loans encumbering unsold portions of the OTN Subdivision. One of those loans was made in the amount of $960,000 on or about January 11, 2008, from Baum. This loan was secured by a trust deed that was recorded June 6, 2008, encumbering Block 6 and Tracts JJ and KK of the OTN Subdivision. That portion of OTN covers approximately 5.8 acres that were planned for future apartments and condominiums along the north side of the project.

In mid 2008, the Debtor was exploring refinancing and consolidating its mortgage loans. In this connection it made a proposal to PSCU resulting in PSCU's $2,750,000 loan to the Debtor on September 12, 2008. This PSCU loan paid off the Baum loan and other loans on portions of the OTN property. Baum released its deed of trust from the Larimer County real estate records on October 6, 2008.

Other loans that the Debtor in September of 2008 refinanced with the PSCU loan had been secured by two other distinct parts of the OTN Subdivision. One had encumbered land at the western edge of the subdivision (Block 1 and Tract JJJ) that was planned for commercial development. The other had been secured by eighteen mixed use lots located in Blocks 4 and 5.

The senior officer who handled the Debtor's loan at PSCU testified credibly that in making its $2,750,000 refinance loan to the Debtor in September of 2008, it was the intention of borrower and lender to encumber with the PSCU Deed of Trust the portions of OTN that had been collateral for the loans that the PSCU loan paid off. The legal description in the PSCU Deed of Trust, however, omitted Tracts JJ and KK from what had been Baum's collateral, and omitted Track JJJ (which abuts Block 1) from the planned commercial land at the west edge of the OTN Subdivision.

Without explanation, to the left and above the "Deed of Trust" heading on the first page of the PSCU Deed of Trust, directly below the address for return of the document following recording, appears the following:

> Tax Parcel Number(s):
> 97013-73-023 through 97013-73-034; 97014 *[sic]*-74-001 through 97013-74-006;
> 97013-70-001 and 97013-79-310; 97013-79-210; 97013-79-211, and 97013-75-006

Records from the Larimer County Assessor's office that were admitted at trial match part of the legal description in the PSCU Deed of Trust, *i.e.* Blocks 1 and 6. Tracts JJ, KK, and JJJ, while missing from the PSCU trust deed's legal description, are covered by these tax parcel numbers. The record before the Court fails to match others of these tax parcel references to the balance of the legal description in the PSCU Deed of Trust or any other real estate.

**V.     Analysis**

    **A.     Does the PSCU/RMH Deed of Trust encumber Tracts JJ, KK, and/or JJJ of the OTN Subdivision and, if so, can RMH's interest in those tracts be avoided by the Trustee?**

RMH claims to hold a collateral security interest in Tracts JJ, KK, and JJJ arising either from the reference to tax parcel numbers covering those tracts on page one of the PSCU/RMH Deed of Trust or by subrogation, with respect to Tracts JJ and KK,[2] to lien rights of Baum whose deed of trust was paid off with the PSCU loan which is now held by RMH.

        1.     Legal Effect of Tax Parcel Reference

RMH maintains that the appearance of the tax parcel numbers on page one of the PSCU/RMH trust deed either itself is sufficient to encumber Tracts JJ, KK, and JJJ or results in inquiry notice to any entity asserting BFP rights, as is the Trustee, such that any BFP takes subject to RMH's lien against these three tracts.

        (a)     Intrinsic Legal Sufficiency or Insufficiency of Tax Parcel Reference

Colorado's recording statute is a race-notice recording statute.[3] Once a document is properly filed for recording, subsequent third parties such as bona fide purchasers are deemed to have notice of, and take subject to, any recorded interest in the property. This is so whether or not the third party actually knows what is in the real estate records; he or

---

[2] The PSCU/RMH trust deed omits from its legal any reference to Tracts JJ, KK, or JJJ. The Baum trust deed included Tracts JJ and KK, but not JJJ, in its legal description of property that was encumbered thereby.

[3] Colorado Revised Statutes, section 38-35-109 states in relevant part,

> (1) All deeds, powers of attorney, agreements or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record may be recorded in the office of the county clerk and recorder of the county where such real property is situated; except that all instruments conveying the title of real property to the state or a political subdivision shall be recorded pursuant to section 38-35-109.5. No such unrecorded instrument or document shall be valid against any person with any kind of rights in or to such real property who first records and those holding rights under such person, except between the parties thereto and against those having notice thereof prior to acquisition of such rights. This is a race-notice recording statute. In all cases where by law an instrument may be filed in the office of a county clerk and recorder, the filing thereof in such office shall be equivalent to the recording thereof, and the recording thereof in the office of such county clerk and recorder shall be equivalent to the filing thereof.

6

she is burdened with "constructive notice" of what is there and the legal consequences that flow therefrom.[4] This is the very essence of a recording statute's function in preserving a stable, reliable marketplace for real estate.

Accordingly, in this case the Trustee is deemed to have knowledge of the reference in the PSCU Deed of Trust to the tax parcel numbers that cover Tracts JJ, KK, and JJJ. The threshold question is, does the recording of the PSCU Deed of Trust containing reference to tax parcel numbers covering Tracts JJ, KK, and JJJ in the OTN subdivision effectively encumber those tracts as against any party who subsequently acquires an interest in the property.[5] RMH answers "yes;" the Trustee, "no."

RMH argues that,

> [t]he presence of any 'aid to identification' including the assessor's schedule number or parcel number on a recorded document of title provides record notice and bars the . . . Trustee from avoiding a Deed of Trust [emphasis added].

RMH Post-Trial Brief, p. 2

For this proposition RMH relies on C.R.S. § 38-35-122. Section (1)(b) of that statute states, ". . . documents [for recording] may include as an aid to identification, immediately preceding or following the legal description of the property, the assessor's schedule number or parcel number." This statute continues at section (3.5)(b) to state,

---

[4] See *Franklin Bank v. Bowling*, **74 P.2d 308, 313 (Colo. 2003)**. The Colorado Supreme Court distinguishes among "actual," "constructive," and "inquiry" notice. It has defined constructive notice as follows:

> [6] Constructive notice is, for all practical purposes, record notice. When a party properly records his interest in property with the appropriate clerk and recorder, he constructively notifies "all the world" as to his claim. The recording acts operate to alert all future grantees as to the rights of the recorder, as the law assumes such grantee will search the index and discover the claim.
>
> *Id.*

[5] In this case reference to legal insufficiency or inadequacy of the property description in the recorded trust deed is analyzed as against the right of the third party with a subsequent record interest in the property. That third party in this case is the Trustee, as a hypothetical bona fide purchaser pursuant to section 544(a)(3) of the Bankruptcy Code. As between the parties to the recorded document itself, where intent is not at issue, the conveyance may be effective whether or not the property description is legally defective. In such case, where an innocent third party's rights are not at issue, the law may provide the victim of mistake or oversight with equitable remedies such as reformation or imposition on the property of an equitable lien.

> . . . the fact that a recorded document omits a legal description is not, by itself and without regard to the totality of the circumstances, determinative of whether the document:
>
> (I) is valid against any person obtaining rights in the real property . . . .[6]

RMH apparently contends that if a legal description is not necessarily required in a trust deed, and that if a trust deed, "as an aid to identification" of encumbered real estate may include the assessor's schedule or parcel numbers, then, in some circumstances the assessor's parcel or schedule numbers alone can be legally sufficient record notice in the absence of a legal description.

That may be so, but this Court concludes that this case does not present such circumstances. The Colorado statute refers to aids to identification "immediately preceding or following the legal description of the property." In the case of the PSCU/RMH Deed of Trust the reference to tax parcel numbers does not appear immediately before or after a legal description or street address. It is not even part of the granting language in the deed of trust.[7] It does not clarify, much less substitute for a description of what is encumbered by this trust deed, and is not record/constructive notice to the Trustee of the same.

(b)     <u>Reference to Tax Parcel Numbers as Inquiry Notice</u>

RMH contends that even if the reference to tax parcels numbers covering Tracts JJ, KK, and JJJ is not itself sufficient to encumber those tracts, such reference on page one of the PSCU Deed of Trust results in inquiry notice. This, RMH argues, precludes the Trustee from taking as a bona fide purchaser, free from a PSCU/RMH lien against Parcels JJ, KK, and JJJ.

---

[6] Section 3.5 to C.R.S. § 38-35-122 was added to the statute by the Colorado legislature in 2013 effectively to overrule the Colorado Supreme Court's response to a question certified to it from this Bankruptcy Court in which the Colorado Supreme Court had held that the recording of a trust deed containing a correct street address of the property purportedly encumbered, but omitting a legal description, did not provide constructive notice of the encumbrance [to a bankruptcy trustee]. *Sender v. Cygan (In re Rivera)* **No 11 SA 261 (2012 CO 43)** (**June 4, 2012**) (opinion withdrawn).

[7] The notion that any interest in real property, for security or otherwise, could be created without some description of the property being included in a granting clause in which the transferor purports to transfer, demise, sell, convey, lease, encumber, pledge, or otherwise grant to the transferee an interest in the property runs afoul of fundamental conveyancing precepts of American property law. See 23 *Am. Jur.* 2d Deeds § 13. Words of grant.

The Colorado Supreme Court has defined inquiry notice as follows:

> Inquiry notice arises when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another. By operation of law, the party will be charged with all knowledge that a reasonable investigation would have revealed.

***Franklin Bank v. Bowling,*** **74 P.3d 308, 313 (Colo. 2003)**

In appropriate circumstances inquiry notice under Colorado's recording statute can defeat a bankruptcy trustee's avoiding powers as a bona fide purchaser pursuant to section 544(a)(3) of the Bankruptcy Code. ***Sender v. Cygan (In re Rivera),*** **513 B.R. 742 (Bkrtcy. D.Colo. 2014).** In the ***Cygan*** case a trust deed contained in its granting clause a correct street address and a reference to an exhibit for a legal description. The recorded trust deed omitted the exhibit. The bankruptcy court ruled in these circumstances the omission of a legal description was not fatal. The correct street address was sufficient to provide the bona fide purchaser for value with inquiry notice, and the trust deed lien was not vulnerable to avoidance by the bankruptcy trustee. ***Id.*** **at p. 761.**

By the very nature of inquiry notice, its application is driven by the detail of the circumstances of any given case. As concerns inquiry notice, the instant case is distinguishable from ***Cygan***. In ***Cygan***, having imputed record knowledge of a correct residential street address of the property intended to be encumbered, any reasonable person could identify that property with little effort unless he sought to avoid doing so. In this case the reference to tax parcel numbers for Tracts JJ, KK, and JJJ are three among many referenced tax parcel numbers related to collateral that is actually legally described in the trust deed granting clause as Blocks 1 and 6 and various lots in Blocks 4 and 5 of the OTN Subdivision. The very Colorado statute that now mandates that a legal description is not in all circumstances required to identify property in a recorded document also mandates that,

> Should any variance or ambiguity result from the inclusion of a street address, identifying number, or assessor's schedule number or parcel number on a document, the legal description of the property shall govern. [emphasis added]

C.R.S. § 38-35-122(2)

An important factor in determining whether the Trustee's avoidance claim is defeated by her inquiry notice is the location of the reference in the trust deed to the tax parcel numbers covering Tracts JJ, KK, and JJJ. The reference to tax parcel numbers, while on the first page of the trust deed, is not in the granting clause of this document. There is no reference to tax parcel numbers in the essential clause where the Debtor grants
an interest in property to the Larimer County Public Trustee for the benefit of PSCU as security for repayment of the Debtor-PSCU $2,750,000 loan.

Inquiry beyond the granting clause, or cross reference in a granting clause to an exhibit or definition of encumbered property, is not ordinarily what a reasonable person would undertake in determining what a security document encumbers. It would be most unusual to anticipate that property in which no interest is granted could be encumbered by a trust deed, mortgage, or other security agreement.

PSCU's own conduct is telling in the inquiry notice analysis. In the regular course of its business, PSCU obtained title insurance for this trust deed when it closed its loan to the Debtor. A senior officer at PSCU who handled the matter testified that he reviewed the title policy that insured the lien of this deed of trust. The title policy did not cover Tracts JJ, KK, or JJJ. Notwithstanding his familiarity with the deed of trust, the PSCU officer made no further inquiry and accepted the title policy, without reference to tax parcels or to Tracts JJ, KK, or JJJ. Similarly, prior to this bankruptcy, when PSCU initiated foreclosure of this deed of trust and in connection therewith looked at the deed of trust with the assistance of counsel, reference to tax parcel numbers resulted in no further inquiry. In the foreclosure, PSCU recorded its Notice of Election and Demand for Sale which identified the property encumbered by the trust deed that was to be foreclosed without reference to tax parcel numbers or to Tracts JJ, KK, or JJJ.

This strongly suggests either that this sophisticated institutional lender is itself unreasonable or, more likely, that a reasonable person, on looking at the PSCU Deed of Trust with its reference to tax parcel numbers, would inquire no further.

This Court concludes in the circumstances reflected in the evidence before it, that the Trustee, as a hypothetical bona fide purchaser under Bankruptcy Code section 544(a)(3), was not put on inquiry notice of RMH's asserted lien against Tracts JJ, KK, or JJJ of the OTN Subdivision by reason of the reference in the PSCU Deed of Trust to tax parcel numbers covering those tracts.[8]

### 2.  Subrogation to Lien Rights Against Tracts JJ and KK

Colorado recognizes subrogation of lien rights as an exception to the operation of the Colorado recording statute. This exception only applies in limited circumstances where allowing subrogation of lien rights poses no threat

---

[8] C.R.S. § 38-35-108 may resolve as a matter of law whether reference to tax parcel numbers in a recorded deed of trust may put a bona fide purchaser on inquiry notice of encumbrance of the property covered by the tax parcels. Assessor records are typically not recorded in the real estate records. This statute mandates that unrecorded writings purporting to affect title to real property that are referred to in recorded documents bind only the parties to the recorded documents, and the unrecorded documents are notice to no one else. C.R.S. § 38-35-108 further provides that,

> . . . no person other than the parties to the [recorded] instrument shall be required to make any inquiry or investigation concerning such recitation or reference [to an unrecorded writing]. . . .

10

to general operation of the recording statute so as to preserve the stability and predictability of the real estate market in Colorado. *Hicks v. Londre,* 125, P.3d 452 (Colo. 2006). The prototypical fact pattern in which lien subrogation is embraced in Colorado involves no threat to reliance on Colorado's recording statute:

– "A" holds a first mortgage against Blackacre;
– "B" holds a junior lien encumbering Blackacre;
– "C," the prospective subrogee, comes along and refinances the prepayment of "A" with a mortgage loan in the same amount, at the same rate, and with the same maturity as "A's" loan;
– "A" releases its first mortgage;
– "C" unwittingly overlooks "B's" lien

The result: "C," by reason of his oversight is in a junior record position as against "B," and "B," by virtue of a windfall, resulting from "C's" mistake, becomes a first lien upon the release of record of "A's" first mortgage position.

In limited circumstances, Colorado case law declines to give countenance to such an injustice to "C." It does so by allowing "C" to step into - - to be subrogated to - - "A's" released lien position. The mistake is corrected at no expense other than taking back "B's" windfall. "B" ends up in the same position he would hold if "C" had simply bought "A's" loan, rather than refinanced its prepayment on the same terms. Here, there is no threat to the integrity of the recording statute, as "B" never relied on the recording statute to his detriment.

RMH maintains that Colorado's recognition of the doctrine of equitable subrogation as an exception to its recording statute precludes the Trustee from setting aside RMH's asserted lien interest in Tracts JJ and KK even though the PSCU Deed of Trust makes no reference to Tracts JJ or KK. RMH contends, this notwithstanding, at the time this bankruptcy case was filed on May 29, 2012, RMH as successor to PSCU had made a loan, the proceeds of which had repaid the Baum mortgage loan that had encumbered Tracts JJ and KK. RMH argues that at the Debtor's bankruptcy petition date, the date at which the Trustee's avoidance powers under section 544(a)(3) came into being, PSCU/RMH had equitable subrogation lien rights in Tracts JJ and KK, derived from the released Baum trust deed, which subrogation lien rights trump the Trustee's avoidance powers as a hypothetical bona fide purchaser of real property as of the bankruptcy petition date.

As a bona fide purchaser of real property, without notice, the Trustee is entitled to rely on the state of title reflected in the real property records. That proposition is fundamental to the viability of Colorado's real property recording system. The Trustee is deemed to have paid value as a bona fide purchaser. She is entitled to avoid and take free from hidden, non-recorded interests such as that claimed by RMH in Tracts JJ and KK of the OTN Subdivision. Application of equitable lien subrogation in these circumstances is not analogous to circumstances where only a windfall is reversed and where there has been no detrimental reliance on the real property records by the party who loses ground

11

to the equitable subrogee. Both in the *Hicks* case and a later case the Colorado Supreme Court notes that equitable lien subrogation is inappropriate where the party who loses ground to the lien subrogation is prejudiced. ***Hicks v. Londre*, 125 P.3d at 457;** ***Land Title Insurance Corp. v. Ameriquest Mort. Co.*, 207 P.3d 141 (Colo. 2009)** (denying subrogation).

The Court concludes that under section 544(a)(3) of the Bankruptcy Code, the Trustee may avoid any interest RMH claims in Tracts JJ and KK of the OTN Subdivision by way of subrogation to lien rights of Baum.

**B.     Is the Shear Mechanics Lien Valid?**

Colorado mechanics liens are creatures of statute. See C.R.S. § 38-22-101, *et seq.* The policy undergirding the Colorado mechanics lien law is that one who has enhanced the value of particular real property or improvements by his labor or materials, if unpaid, should be secured by the property he helped improve. The basic elements or components of a Colorado mechanics lien are four: (1) supplying work or materials of the kind specified in the statute; (2) for the benefit of specific real property or improvements; (3) at the request of the property owner or one authorized by him; and (4) compliance with statutory procedures for perfection and enforcement of the lien.

1.     <u>Shear's Unpaid Work and Asserted Mechanics Lien</u>

Shear's mechanics lien in the amount of $119,660.72 is asserted against portions of the OTN Subdivision described in the statement of lien recorded by Shear on December 19, 2011, as Blocks 1 and 6 and Tracts JJ, KK and JJJ. At the time, and currently, the work for which Shear was unpaid concerned three specific work assignments which were not part of its job as overall project engineer that culminated in final plat approval of OTN. This unpaid for work concerned specific matters other than overall project planning, engineering, and supervision. These three assignments had nothing to do with securing of OTN final plat approval and were remote in time by several years after that final plat approval was obtained.

The first assignment covered by the Shear statement of lien involved the Debtor's plan to replat all or parts of Block 6 and 9 and Tracts JJ and KK of the OTN Subdivision. Shear assisted with the Debtor's effort to convert authorized use from eleven single family residences to thirty-two multi-family units. Shear's first work on this assignment was undertaken in February of 2009. This replatting effort was not completed. Within weeks of anticipated completion, work ceased, and Shear was called off the project. Shear's last work on this assignment was on or about January 4, 2010. Shear's outstanding invoices for its work on this assignment total $110,060.31.

The second assignment covered by Shear's statement of lien involved consulting with prospective buyers from

the Debtor of Block 1 and Tract JJJ. This assignment started in July of 2010, and was finished by the end of October of that year. It accounts for $8,025.41 of the unpaid work in the Shear lien statement.

The final assignment for which Shear has outstanding invoices is for witness fees. Shear's principal owner testified as a fact witness in a lawsuit against the Debtor and others on a disputed oral contract brought by a consultant, for claimed services concerning a flood plan change at OTN. This work was undertaken and completed in September of 2011, and accounted for $1,575.00 of the total $119,660.72 appearing in Shear's statement of lien recorded December 19, 2011.

    2.    <u>Validity or Invalidity of Shear's Mechanics Lien</u>

    (a)    <u>Shear's Unpaid Work Was Not Lienable Against the Entire Subdivision</u>

Shear's chief executive officer, Brian W. Shear, has testified and the evidence before the Court is clear that Shear and the Debtor did business for more than a decade relating to OTN without any written contract. The evidence is equally clear, and this Court finds, that there were several distinct oral agreements between Shear and the Debtor or its affiliates pursuant to which Shear worked on all or parts of OTN.

The most substantial oral contract between the Debtor and Shear was for planning and supervision of the OTN development almost from inception through final plat approval. This work was fully paid for. Had that not been the case, the Colorado mechanics lien law would have allowed a blanket lien against the entire subdivision, as Shear's overall project supervision for the Debtor was a benefit to the entire subdivision. **See *Compass Bank v. Brickman Group, Ltd.*, 107 P.3d 955, 958 (Colo. 2005)**(recognizing right to file a "blanket lien" where multiple properties are benefitted by work done under a single contract, if apportionment cannot be readily and definitely made).

The work reflected for the three unpaid Shear work assignments that are covered by Shear's statement of lien simply were not part of the development project engineering oral contract between the Debtor and Shear for which Shear might have had a blanket lien. The project engineering had been completed and paid for years before the now outstanding unpaid work was done. The unpaid work was done pursuant to separate, additional oral agreements for work that was unrelated to overall project engineering or supervision. The work covered by Shear's statement of lien either had no benefit to the subdivision as a whole or had very minor, very indirect, or very incidental benefit to the entire subdivision.

In prosecuting its mechanics lien, Shear relies heavily on Brian Shear's testimony that all work Shear did, regardless of when, was done under a single oral agreement with the Debtor, for the benefit of the entire subdivision. That testimony is not credible and is not supported by other evidence in this record. After final plat approval of the OTN

Subdivision, Shear separately and formally bid other work for Debtor's further development of this project. Shear presented to the Debtor at least one written proposal for such work that had nothing to do with the subdivision as a whole. When Shear finally recorded a statement of lien in December of 2011, it did not lien the entire portions of the subdivision that were still owned by the Debtor. Mr. Shear testified in his deposition that much of the portion of the subdivision that Shear liened was, in fact, not benefitted by the work for which Shear remained unpaid. On cross-examination Mr. Shear testified that he liened what he liened at the recommendation of the Debtor's principal in hopes that this would benefit the Debtor financially, thereby allowing Shear to get paid and to secure future business from the Debtor.

Shear has asserted its mechanics lien with respect to three assignments for which its work remains unpaid: the unfinished attempt to replat Blocks 6 and 9 and Tracts JJ and KK of the OTN Subdivision; consulting with potential purchasers of Block 1 and Tract JJJ; and testifying in Debtor's defense in a collection dispute. The Court concludes that to the extent this work is lienable at all, none of this work is entitled to a blanket lien against the entire portion of the OTN Subdivision that remained owned by the Debtor and which is now owned by the Trustee. To the extent this work is of the kind that could support a mechanics lien at all, it is lienable only against specific portions of OTN, if any, which the work from the particular assignment benefitted.

(b)     Non-Lienable Work

This Court has found from the evidence before it, as a matter of fact, that the work for which Shear pursues its mechanics lien was not done under a contract benefitting the entire OTN development such as might support a blanket lien against the entire subdivision. Two of the three separate assignments on which Shear had separate oral agreements with the Debtor and for which Shear remains unpaid are for work that could not support a mechanics lien in any case. This work is not the kind enumerated in Colorado's mechanics lien statute that entitles a contractor, laborer, supplier, engineer, or anyone else to a lien at all.

Any work to be entitled to a mechanics lien must be work of a nature that may improve or enhance the value of real property or real property improvements. ***Thirteenth St. Corp. v. A-1 Plumbing and Heating Co.*, 640 P.2d 1130, 1134 (Colo. 1982).** Shear's work, assisting in the Debtor's unsuccessful effort to sell all or parts of Block 1 and Tract JJJ is not work enhancing, or even potentially enhancing, that property or its value. Helping to sell property may help the seller, who in this case was struggling financially, but it improves the property not at all. It is not lienable work. Similarly, Shear's services for unpaid witness fees were not directed in any way to improving the value of any property in OTN. It is simply not work to which the Colorado mechanics lien statute applies.

(c)     Untimely Recording of Lien Statement

The only lienable work for which Shear remains unpaid is that which was part of the Debtor's effort to replat Blocks 6 and 9 and Tracts JJ and KK of the OTN Subdivision. This work accounts for more than 90% of Shear's mechanics lien statement. In order to preserve any lien rights under the Colorado mechanics lien statute, that statute mandates that Shear must have filed for record its lien statement,

> . . . at any time before the expiration of four months after the day on which the last labor is performed . . . by such lien claimant.

C.R.S. § 38-22-109(5)

Shear's last work on the replatting effort of Blocks 6 and 9 and Tracts JJ and KK took place on or about January 4, 2010. Shear's lien statement was filed for record December 19, 2011, more than twenty-three months later. The only unpaid work Shear did within four months prior to filing its lien statement was testifying in Debtor's defense in the above-referenced contract collection litigation. Shear's lien rights for its only lienable work were extinguished by reason of its failure timely to file its statement of lien.

For the reasons stated above, the Court concludes that the Shear mechanics lien is in its entirety invalid. It is invalid not against the Trustee as a bona fide purchaser under section 544 of the Bankruptcy Code, but, apart from the Trustee's avoiding powers, it is invalid as against the property of the bankruptcy estate as successor to the Debtor under section 541. Consequently, this mechanics lien, being invalid against the property described therein, is not preserved for the benefit of this bankruptcy estate pursuant to 11 U.S.C. § 551.

C. The Trustee's Claim Under Colorado's Excessive Mechanics Lien Statute

The evidence at trial indicates that Shear worked in good faith with the Debtor on parts of OTN through its work covered by the unpaid invoices totaling the $119,660.72 referred to in Shear's lien statement. The Trustee has asserted, as an alternative grounds to set aside Shear's mechanics lien, that it was knowingly, improperly filed by Shear. Under C.R.S. § 38-22-128, a purported mechanics lien knowingly filed in an excessive amount or filed against property known not to be lienable for the unpaid work in question may be forfeited. See ***Honnen v. Never Summer Backhoe***, **261 P.3d 507 (Colo. App. 2011).** Furthermore, in such circumstances, the owner of the improperly liened property may be awarded its costs and attorneys fees.

Brian Shear acknowledged that substantial portions of the property Shear liened received no benefit from much of Shear's unpaid work. He testified that he was uncertain why or how the portions of the OTN Subdivision described in the Shear statement of lien were selected. He did not know why Block 9, which was the subject of the unpaid lienable replatting work was omitted from the lien statement. Mr. Shear further testified, and documentary evidence supports, that filing a lien against portions of this subdivision at all was not initially his idea or that of anyone else at Shear. Not

only was filing the lien done at the suggestion of the Debtor's owner, it was she who recommended the portions of the development that Shear should include in its statement of lien. The evidence strongly suggests that there may never have been a lien asserted by Shear against any portion of the OTN Subdivision, but for the prodding by the Debtor, the owner of the property liened.

The Shear mechanics lien may well be forfeitable under C.R.S. § 38-22-128. However, under these circumstances, even if this lien is voidable as having been filed knowingly and improperly, this Court would decline to award costs and attorney fees to the Trustee as successor to the Debtor under Bankruptcy Code section 541. The remedies contained in C.R.S. § 38-22-128 exist for the protection of property owners, wronged by improperly filed mechanics liens. Where a property owner is instrumental in an improper filing of a lien against his own property, awarding costs and fees in his favor is inappropriate.

Upon the foregoing findings of fact and conclusions of law, it is

ORDERED that Plaintiff's claim for declaratory relief seeking a determination that the PSCU Deed of Trust recorded in the Larimer County, Colorado real property records on September 15, 2008, at Reception No. 20080058839, now held for the benefit of RMH, encumbers any portion of the Old Town North Subdivision other than that which is legally described in Exhibit A thereto is DENIED and DISMISSED;

FURTHER ORDERED that Shear's asserted mechanics lien referred to in the statement of lien recorded in the Larimer County, Colorado real property records on December 19, 2011, at Reception No. 20110079392 is invalid and creates no encumbrance against the property described therein or any improvements thereon or appurtenances thereto;

FURTHER ORDERED that the Trustee's claim that the invalid Shear mechanics lien referred to above is preserved for this bankruptcy estate under 11 U.S.C. § 551 is DENIED and DISMISSED;

FURTHER ORDERED that the Trustee's claim for an award of attorneys fees and costs from Shear pursuant to C.R.S. § 38-22-128 is DENIED and DISMISSED;

FURTHER ORDERED that the Trustee may recover her costs herein against RMH and Shear, divided equally between them; Shear and RMH shall bear their own respective costs; and

FURTHER ORDERED that judgment shall promptly enter consistent with these findings of fact, conclusions of law, and rulings.

DATED:

BY THE COURT:

_____
A. Bruce Campbell
U.S. Bankruptcy Judge